**550** Alhambra Am. Co., Inc., *v.* Associated F. Nat. P., Inc.

Fourth Department, January, 1924.                    [Vol. 207

Alhambra Amusement Company, Inc., Respondent, *v.* Associated First National Pictures, Inc., Appellant.

Fourth Department, January 2, 1924.

Contracts — action for breach of contract to supply plaintiff with motion picture films for exhibition — plaintiff signed contract presented by defendant's agents for motion picture service for more than one year — contract contained clause that it would not be valid until signed by defendant — agents of defendant recognized contract as existing for several weeks — later defendant refused to execute contract — agents had no authority to bind defendant — approval by defendant of single production agreement afterwards made did not satisfy Statute of Frauds (Pers. Prop. Law, § 31, subd. 1) — parol evidence not admissible to show that agents stated that contract would be binding as soon as signed by plaintiff.

In an action to recover damages for breach of an alleged contract whereby the defendant was to furnish motion picture films to the plaintiff for exhibition purposes, it appeared that agents of the defendant presented a contract to the plaintiff which, by its terms, was not to be performed within one year and which contained a clause to the effect that the contract would not be valid until executed by the defendant; that thereafter the agents for the defendant dealt with the plaintiff as though the contract had been executed by the defendant by supplying him with films and advertising matter; that thereafter agreements for a single production were entered into between the plaintiff and the defendant, which agreements were made only with those who held a contract similar to the one in question and said agreements for a single production were approved by the defendant; that about six weeks after the contract had been signed by the plaintiff, during which time its existence had been recognized by the defendant's agents, the defendant declined to execute the proposed contract.

*Held*, that the defendant's agents did not have power to enter into a binding contract with the plaintiff on behalf of the defendant, since it was specifically provided in the proposed contract that it would not be valid until it was executed by the defendant.

The approval by the defendant of the single production agreement did not amount to a sufficient execution of the proposed contract to comply with the provision contained therein that it must be executed by the defendant, nor did said approval satisfy the Statute of Frauds (Pers. Prop. Law, § 31, subd. 1), since none of the agreements for the single production is so connected by reference to the contract in question that they may be construed together as one instrument without the aid of oral evidence; and, therefore, the contract was not subscribed by the party to be charged therewith.

Parol evidence was not admissible to show that the agents of the defendant agreed with the plaintiff that the contract would be binding as soon as the plaintiff signed it, for such evidence is in direct contradiction of the terms of the alleged contract.

Appeal by the defendant, Associated First National Pictures, Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Oneida

on the 6th day of February, 1922, upon the verdict of a jury, and also from an order entered in said clerk's office on the 16th day of February, 1922, denying the defendant's motion for a new trial made upon the minutes.

*Miller & Hubbell* [*James F. Hubbell* and *Dwight C. Pitcher* of counsel], for the appellant.

*Lewis, Pratt & Fowler* [*W. R. Pratt* of counsel], for the respondent.

HUBBS, P. J.:

The plaintiff is a domestic corporation engaged in the motion picture business at Utica, N. Y. The defendant is a foreign corporation engaged in " purchasing, leasing or otherwise acquiring motion pictures and the rights to exhibit or distribute the same, and rights and interests in connection therewith in behalf of itself and its franchise holders." The defendant furnished motion pictures to exhibitors through another corporation, which acted as its distributing agent for New York State. This corporation was known as the Exchange. There was a very close relationship existing between the defendant and the Exchange. The defendant was spoken of as the parent company. The Exchange was engaged in selling its own stock and securing contracts for the defendant from exhibitors. Two agents of the Exchange entered into negotiations with the plaintiff's officers for the purpose of securing a contract from it under which the plaintiff would exhibit the pictures which the defendant had to offer as such pictures were released by the defendant for exhibition. The agents of the Exchange exhibited to the plaintiff's officers a form of contract which provided that the plaintiff should purchase twenty-two and one-fifth shares of stock in said Exchange for $2,220, and that it would pay to the defendant $75 for each $100,000 of the exhibition value of each picture used by it under the proposed contract. The contract form provided the method of fixing the exhibition value of the pictures. The form of contract contained many terms and conditions. In brief, its purpose was to secure to the plaintiff the right to exhibit pictures distributed or released by the defendant and to purchase twenty-two and one-fifth shares of stock, not of the defendant corporation, but of the Exchange. The 24th clause of the proposed contract read as follows:

" 24. Neither this contract nor any modification thereof shall be valid until and unless executed by the Company in writing at its New York office through its duly authorized officers."

The word " company " referred to the defendant, the party of the first part to the proposed contract. The party of the second part was referred to as " franchise holder."

**552** ALHAMBRA AM. CO., INC., *v.* ASSOCIATED F. NAT. P., INC.

Fourth Department, January, 1924. [Vol. 207

Clause 24, above quoted, was read by the plaintiff's officers and commented upon by them. They understood the clause and protested against signing the proposed contract until they were assured by the Exchange agents that they would be " franchise holders " as soon as it should be executed by the plaintiff and the sum of $2,200 paid by check. They were assured that they would be " franchise holders " immediately upon the signing of the contract by them, and they were told that the home office had been called on the telephone and that the agents had obtained authority to that effect. Before executing the proposed contract the plaintiff's attorney was consulted. The instrument was executed by the plaintiff's officers and a check for $2,200, payable to the defendant's order, was delivered to the agents of the Exchange. There can be no doubt but what the plaintiff's officers clearly understood the clause in question and signed the instrument knowing that it contained such clause. They chose to rely upon the statements of the agents of the Exchange that the proposed contract would become operative at once upon being signed by them, although not executed by the defendant. The defendant subsequently declined to execute the proposed contract.

This action is based upon the theory, *first,* that the Exchange and its servants who negotiated the proposed contract had authority to bind the defendant even though it afterward refused to execute it, and, *second,* that the defendant did itself ratify and execute the proposed contract. The defense is a denial of the existence of a valid contract and the Statute of Frauds. (See Pers. Prop. Law, § 31, subd. 1.)

The proposed contract was never, in form, executed by the defendant. The plaintiff relies upon certain acts of the Exchange and its agents, and of the defendant, as evidence of a ratification and to take the case out of the operation of the Statute of Frauds. The plaintiff executed the proposed contract on September 10, 1920. On the thirteenth the plaintiff, by its president, wrote to the manager of the service department of the Exchange: " We have become franchise holders of your product," and asked about advertising helps. The Exchange, through the said service department manager, wrote to the plaintiff's president: " Permit me to extend to you the hand of welcome and congratulate you on becoming a franchise holder." On the same day the plaintiff wrote the Exchange at its Buffalo branch office: " Please be good enough to furnish us with a complete list of available pictures due us under the franchise advise exhibition value so that we may furnish you with dates at the earliest possible moment." On September fifteenth the broker in charge of the Buffalo branch

of the Exchange wrote the plaintiff: " Your favor of the 13th received and wish to advise that we are now ready to accept bookings on the following subjects under the franchise: " Then followed a list of pictures and their exhibition value.    On September eighteenth the plaintiff wrote the Exchange, Buffalo branch, to book it with seven of the pictures listed.    The order was acknowledged on September twentieth, and on the twenty-second the plaintiff ordered another picture from the Buffalo branch.    On October twenty-first the Buffalo branch wrote plaintiff, giving a list of pictures, stating: " The following is the list of productions now available on the franchise."    The pictures ordered were furnished and paid for to the Exchange on the basis provided for in the proposed contract with the defendant, that is, on a basis of $75 to each $100,000 of exhibition value.    The plaintiff was never notified in any way that the pictures were not being furnished in fulfillment of the proposed contract with the defendant.    None of the letters or transactions referred to above were with the defendant.    They were all acts of the Exchange and its agents.

After the order for pictures placed by the plaintiff with the Exchange, Buffalo office, by letter of September eighteenth, the plaintiff, on September twenty-first, signed five separate agreements or orders for five separate pictures named in the plaintiff's letter of September eighteenth.    The forms, apparently, were furnished by the Exchange.    At the top of the order form, in large letters, appear the words " Agreement for any single production." The agreements purport to be between the plaintiff and the defendant.    Each agreement is marked with a rubber stamp " O. K., R. H. C."    The initials are those of R. H. Clark, general manager of the Exchange.    They are also each stamped with a rubber stamp " Approved, W. J. M., Oct. 1, 1920, Associated First National Pictures, Inc.," the defendant herein.    It may be inferred that the initials W. J. M. were the initials of W. J. Morgan, an officer of the defendant.

The plaintiff's principal reliance is placed upon these contracts for " any single production," and the fact that they bear the stamp of the defendant approving them.    It is urged that the pictures ordered under those " single production " contracts were pictures listed in the letter written by the broker in charge of the Buffalo office of the Exchange and referred to as pictures " under the franchise."    It is contended by the plaintiff that when the defendant placed its stamp upon the five contracts " for any single production " it approved and ratified the delivery by the Exchange to the plaintiff of franchise pictures at the price fixed in the proposed contract, thereby ratifying and adopting the pro-

**554** Alhambra Am. Co., Inc., *v.* Associated F. Nat. P., Inc.

Fourth Department, January, 1924. [Vol. 207

posed contract, and that such stamping of the " single production " contracts was a sufficient execution of the proposed contract to comply with clause 24 thereof and to comply with the provisions of the Statute of Frauds.

The form of the " Agreement for any single production " may be assumed to be a form used by those who hold franchise agreements under contracts in form like the one in question. No deposit was required of the plaintiff for the single pictures so ordered, although a deposit was provided for under a different form of contract entered into for single pictures by those not holding a franchise agreement.

The fact that the plaintiff's check was cashed does not bind the defendant. The giving of the check was not contemplated or provided for by the proposed contract. It did provide for an assignment by the plaintiff, simultaneously with the execution of the proposed contract, of certain stock. Instead of delivering the stock assigned as required in the proposed contract with the instrument, it gave a check to cover the cost of the stock. Delivery of the stock or its equivalent was essential to the completion of the plaintiff's part of the execution of the proposed contract. Giving the check was the first step toward procuring the stock in order that it might be assigned. The defendant denies that it ever saw the plaintiff's check, but whether it did or not is immaterial. The defendant had a right to cash the check, not as a payment under the proposed contract, but in performance of the plaintiff's duty. It had a right to know, before approving or disapproving the proposed contract, whether the check was good and whether the stock could be procured so that it could be properly assigned.

Taking the facts most favorable to the plaintiff, the following *résumé* of vital matters may be made. The officers of the plaintiff were approached by agents of the defendant who presented a form of contract prepared by it; the plaintiff's officers noted and called particular attention to clause 24, and consulted an attorney with reference to the contract; demanded to be assured that execution of the contract would constitute the plaintiff a franchise holder; upon receiving such assurance from the agents, not in writing, executed the form with clause 24 embodied therein; that subsequently, in response to letters advising agents of the defendant that the plaintiff was a franchise holder, it was referred to as such; that the plaintiff's check was cashed by the defendant or its agents; that subsequently, over a period of five or six weeks, the plaintiff received films and advertising matter therefor on separate contract forms of the Exchange which referred to the franchise and bore the approval of the defendant; that the plaintiff

paid the Exchange for such pictures; and that after such course of dealing the plaintiff received notice from the defendant of its disapproval of the proposed contract.

The proposed contract was one not to be performed within one year. It was, therefore, void unless " it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent." (Pers. Prop. Law, § 31, subd. 1.) Part performance would not take it out of the operation of the statute. (*Tyler* v. *Windels*, 186 App. Div. 698; affd., 227 N. Y. 589.) It was not signed by the defendant and the defendant never directly acknowledged its existence as a contract. Its agents, who were not shown to have had knowledge, or to have been in position to obtain knowledge, as to whether or not the proposed contract had been approved, referred to the plaintiff as a franchise holder, but only in response to statements to that effect emanating from the plaintiff. Subsequently the defendant's agents delivered to the plaintiff films and advertising matter upon contracts referring to the franchise and bearing the defendant's approval. But neither of these, the letters or the contracts covering single productions, were of such a nature as to be " physically united " or as to " contain such reference " to the main contract " that they may be construed together as one instrument without the aid of oral evidence," and, therefore, the writing was not " subscribed by the party to be charged." (*Coe* v. *Tough*, 116 N. Y. 273; *Newbery* v. *Wall*, 65 id. 484; *Roaring Spring Blank Book Co.* v. *Lesser*, 75 Misc. Rep. 617.)

Whatever oral agreements were made at the time of signing the instrument were merged therein. The plaintiff must rely upon the contract to sustain the judgment and as a party to the contract it cannot vary it by parol. The contract provides specifically that it was not to become valid unless executed by the defendant in New York in writing by its duly authorized officers. Proof of any agreement contrary thereto is not available to the plaintiff under the parol evidence rule. (*Traders National Bank* v. *Laskin*, 207 App. Div. 18.)

The plaintiff executed the contract with knowledge that the agent did not have authority to complete the contract, and that it could be made binding only when executed by the defendant at its New York office. That provision of the contract was binding on the plaintiff, and the words and acts of the agents did not take the place of such execution of the contract by the defendant. (*Waxelbaum* v. *Schloss*, 131 App. Div. 826; *Bell Clothes Shops, Inc.*, v. *Kamber*, 204 id. 1; *Senner & Kaplan Co.* v. *Gera Mills*, 185 id. 562).

In the case of *Sturtevant* v. *Fireproof Film Co.* (216 N. Y. 199)

at the end of the contract therein under consideration appeared the words: " All contracts and orders taken are subject to the approval of the executive office at Hyde Park, Mass." The court held that those words were not a part of the contract under the facts in that case, but stated: " If this provision was a part of the proposal, there could be no proof of a contract in the absence of evidence that the order was approved and that the defendant had been notified of that fact."

The evidence failed to establish the approval of the proposed contract in question by the defendant, or that it was signed so as to take it out of the operation of the Statute of Frauds.

The judgment and order should be reversed and a new trial granted, with costs to the appellant to abide the event.

All concur.

Judgment and order reversed on the law and new trial granted, with costs to appellant to abide event.